## Newton v. Hicks' Adm'r.

March 8, 1940.

J. S. Sandusky, Judge.

R. C. Tartar for appellant.

B. J. Bethurum and Charles N. Hobson for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming in part and reversing in part.

De Forrest Hicks was a ne'er-do-well who made his home for some 10 or 12 years before his death with Sylvester Newton's family in Somerset, Ky. It appears that Hicks' brothers brought him to the hotel operated by Sylvester Newton with the request that Hicks be given a job at the hotel. Newton informed the brothers he had no opening for Hicks, whereupon they requested Newton to let him remain at the hotel for a couple of weeks until they could locate a job for him. The couple of weeks never expired and Newton let him remain at the hotel until his death in November 1934, although on several occasions Newton insisted upon his leaving and obtaining employment. Though addicted to liquor, Hicks was an affable person and acted as night clerk at the hotel for which he received his room, board, laundry

and clothes, but received no pay. At irregular intervals Newton and his son, Abe, handed him small sums for cigarettes, barbers' bills and other such incidental expenses. The record does not show any heirs survived Hicks except a sister, Mrs. B. H. Beuhler, his administratrix, the appellee here.

The appellant, Abe Newton, assisted his father, Sylvester Newton, in operating the hotel, and in 1923 or 1924, he took out two industrial insurance policies on Hicks' life. After paying the premiums thereon for several years appellant became in need of money for his wife's surgical operation, and with Hicks' consent, he surrendered these policies to the company and received their cash value amounting to $169. Shortly thereafter appellant took a number of industrial insurance policies on the life of Hicks. Four of these policies were issued by the Prudential Insurance Company; to-wit, Sept. 26, 1927, a policy for $408; April 15, 1929, a policy for $129; Feb. 13, 1933, a policy for $200; and March 6, 1933, a policy for $200. He also took out two industrial insurance policies on Hicks' life in the Metropolitan Insurance Company on Sept. 26, 1927 and November 1, 1928, which aggregated $974.54. There was a $500 policy issued by the National Life Insurance Company on the life of Hicks in which appellant was named as beneficiary but the record does not show the date it was issued. The premiums on most of these policies were payable weekly, and when any effort was made to collect them from Hicks, he sent the collector to appellant, who held the policies and the premium receipt books, and who paid all the premiums.

Neither the policies, nor copies thereof, nor any assignments alleged to have been made of same, are in the record, and although many exhibits are referred to in the transcript of evidence, not one of them can be found in the record. It is stated in the brief for appellee, and not denied by appellant, that the $500 National policy was the only one in which a beneficiary was named, and the remaining six policies all contained this facilitating clause, "The company may pay the amount due under this policy to either the beneficiary * * * or to any other person appearing to the company to be equitably entitled to same." Due to the comparatively large amount each insurance company was obligated to pay,

the Prudential and Metropolitan required a personal representative to qualify before they would pay their respective policies.

Appellant qualified as administrator shortly after Hicks' death and in so doing he led the county judge to believe no kin of Hicks' desired to qualify. After he collected the proceeds of the policies, Mrs. Beuhler, Hicks' sister, heard of the amount of the insurance and on Jan. 11, 1935, she moved the county judge to remove appellant as administrator and to appoint her to administer the estate of her brother, which motion was sustained. Appellant resigned as administrator and on Jan. 24, he filed a settlement in the county court which showed he collected $2,017.86 on the Prudential and Metropolitan policies; that he paid $1,113.84 premium on the policies carried in these two companies, and the interest on these premiums amounts to $111.10; that he paid $201.50 funeral expenses and doctor bills; that 5% commission is due him as administrator, amounting to $100.92, and a $50 fee is due the attorney representing him as administrator; that he expended $100 for deceased on a whiskey indictment in federal court, and advanced deceased an aggregate of $500 during the last five years of his life. These items total $2,177.36, and left the estate insolvent by $159.

Mrs. Beuhler filed exceptions in the county court to this settlement denying any of the expenditures were proper charges against the estate, and pleaded the statute of limitation against appellant recovering any premiums paid more than five years prior to the death of her brother. Kentucky Statutes, Section 2515. Appellant's response was a traverse and contained the affirmative plea that he paid the premiums under the belief he would be entitled to collect the policies on the death of the insured, and that should the court adjudge he was not entitled to the proceeds of the policies, he should recover the amount of the premiums he had paid. He duly proved his claims against decedent's estate as required by statute. The county judge overruled the exceptions and Mrs. Beuhler appealed to the circuit court. Upon proof heard, that court adjudged the Prudential policies had been assigned to appellant and he was entitled to the proceeds thereof in the sum of $1,043.42; that he was entitled to $398.91 in premiums he paid on

the Metropolitan policies, funeral expenses, doctor's bill, attorney's fee, and $12.58 commissions as administrator, or a total of $1,794.31. It was further adjudged appellant should pay Mrs. Beuhler $315.55, being the difference between the $2,017.86 he collected on the Prudential and Metropolitan policies and the $1,704.31 credits allowed him in his settlement. Both parties filed motions and grounds for a new trial, which were overruled, and appellant is here with his bill of exceptions on his motion for an appeal, and Mrs. Beuhler prosecutes a cross-appeal.

It is the contention of the appellant that these policies were assigned to him by Hicks and that as all of them are industrial policies upon which he paid the premiums, it is not necessary that he have an insurable interest in the life of Hicks to collect the proceeds thereof under the facilitating clause. Mrs. Beuhler's position is that the aggregate amount of these policies takes them out of the class of industrial insurance, therefore appellant is not entitled to their proceeds as he had no insurable interest in the life of deceased; also, any assignment of the policies to him was void; that he could not recover for premiums paid more than five years before the death of her brother; that he was not entitled to qualify as administrator, he performed no services as such for the estate and is not entitled to commissions, or to an allowance for the attorney representing him as administrator.

It has long been the rule in all jurisdictions that one who has no insurable interest in the life of another cannot be the beneficiary in a policy issued on his life, and this rule applies to the assignment of a policy after it is issued and prevents the assignee without an insurable interest from collecting the policy at the death of the insured. Cooper's Adm'r v. Lebus' Adm'rs, 262 Ky. 245, 90 S. W. (2d) 33; Metropolitan Life Ins. Co. v. Nelson, 170 Ky. 674, 186 S. W. 520, L. R. A. 1918F, 457, Ann. Cas. 1918B, 1182, and authorities therein cited. Where an industrial policy contains a facilitating clause allowing the company to pay the amount due under the policy to the beneficiary, or to the one who may appear to the company to be equitably entitled thereto, the Nelson case draws a distinction between ordinary life and industrial insurance, and excepts the latter from the

general rule that one without an insurable interest in the life of another may not collect the policy; and such distinction was followed in the recent case of Krumphorn v. John Hancock Mut. Life Ins. Co., 272 Ky. 719, 114 S. W. (2d) 1125. The Krumphorn and Nelson cases define industrial insurance as small policies with weekly premiums, the purpose of which is not to augment insured's estate or to care for his dependents, but to provide for insured's last illness and a decent burial. While the Nelson case allows one having no insurable interest in the life of another to recover on an industrial policy containing a facilitating clause, yet it expressly says, there is no abrogation of the general rule that one without an insurable interest in the life of another cannot carry an insurance policy on such person, and the exception applies only to industrial insurance containing a facilitating clause where "the size of the policy is not beyond a sum reasonably certain to accomplish the purpose intended (to provide for last illness and burial), and good faith is shown by all parties concerned." The aggregate amount of the Prudential and Metropolitan policies is around $2,000, which makes it apparent this sum is not for the purpose of bearing the expenses of the last illness and funeral, therefore, the policies cannot be regarded as industrial insurance and appellant cannot collect the proceeds since he had no insurable interest in the life of Hicks. Krumphorn v. John Hancock Mut. Life Ins. Co., supra.

It cannot be argued with reason that as each of these policies was for an amount not more than sufficient to meet the expense of the last illness and the funeral of deceased, each was an industrial policy containing a facilitating clause and appellant should be allowed to retain the proceeds of each policy. According to such argument, one could take out innumerable small policies containing a facilitating clause on a person in whom he had no insurable interest, pay the premiums thereon and collect the policies at the death of the insured regardless of the aggregate amount of the insurance, and thus defeat the wholesome public policy of this State forbidding one without an insurable interest in the life of another to carry insurance on that other. New York has a statute limiting the amount of an insurance policy which may be issued on the life of a child. In Flynn v.

Prudential Ins. Co., 207 N. Y. 315, 100 N. E. 794, it was held the purpose of that statute could not be defeated by obtaining a number of policies, each of which did not exceed the limit named in the statute.

Appellant was named as beneficiary in the National policy for $500 upon which he paid the premiums with the deceased's knowledge and consent. The expense of the last illness and funeral of deceased amounted to about $200, which was paid by appellant and which we hold should have been charged against the proceeds of this policy, leaving a balance from it in his hands of about $300. The record does not show the amount of premiums appellant paid on this policy, but judging from the amount he paid on the other policies, we cannot be far wrong in saying that the $300 left in his hands about equaled the premiums he paid on it. Since appellant has a right to recover these premiums, as pointed out in the following paragraph, it would be useless to require him to account for this $300, and we will not do so.

The appellant is not entitled to the proceeds of the Prudential and the Metropolitan policies, but as he paid the premiums thereon in good faith, and as both he and deceased believed the contracts of insurance were valid, he is entitled to be reimbursed from the estate of Hicks the amounts he paid for such premiums on these policies, with interest from the dates of payment, Griffin's Adm'r v. Equitable Assur. Soc., 119 Ky. 856, 84 S. W. 1164, 27 Ky. Law Rep. 313; Commonwealth Life Ins. Co. v. Wood's Adm'x, 263 Ky. 361, 94 S. W. (2d) 351. The record shows 12 pages of such payments beginning on Nov. 7, 1927 and ending on Nov. 24, 1934, and we will not attempt to calculate the amount of such premiums, nor the interest thereon, and the parties will have that done upon the return of the case. The payment of these premiums by appellant was properly proven by the agents of the Prudential and Metropolitan who collected them, and by producing the checks through which most of them were made, and by the banker who testified these checks cleared through his bank.

We cannot agree with appellee that appellant should be limited by the five year statute in collecting the premiums he paid on these policies. These weekly pre-

mium payments kept the policies alive. Had they ceased five years ago, there would have been no policies in force at Hicks' death, and it is apparent the payment of the premiums and the continuing in force of the policies constitute one continuous transaction. Appellee cannot with reason assert a claim to the proceeds of the policies and then have the statute of limitation bar appellant's claim to a recovery of the premiums paid under mistake of law. Again, appellant's claim to these premiums did not mature until the death of the insured when appellee asserted claim to the policies on behalf of her brother's estate, hence the statute of limitation did not start running against appellant until that time.

Appellant is entitled to no commissions, nor to an allowance for his attorney, for the short time (about one month) he served as administrator. In the first place, he had no right to the appointment; and had he fully and accurately informed the county judge of all the facts, he would not have been appointed. In the second place, he performed no services for the estate, but all of his efforts, and those of his attorney, were put forth for appellant's individual benefit and not for the estate. Foster v. Foster, 71 S. W. 524, 24 Ky. Law Rep. 1396; Anspacher v. Utterback's Adm'r, 252 Ky. 666, 68 S. W. (2d) 15.

The judgment is affirmed on the appeal and is reversed on the cross-appeal for proceedings consistent with this opinion.